UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
TYCO INTERNATIONAL, LTD., and :
TYCO INTERNATIONAL (US), INC., :
: 03 Civ. 2247 (TPG)
Plaintiffs, :
: **OPINION**
– against – :
:
MARK H. SWARTZ, :
:
Defendant. :
------------------------------------------------x

Plaintiffs, Tyco International, Ltd. and Tyco International (US), Inc. ("Tyco"), bring eight causes of actions against their former Chief Financial Officer ("CFO"), Mark Swartz, including fraud and breach of fiduciary duty. Tyco moves for partial summary judgment as to liability on all causes of action and seeks a trial only on the issue of damages.

The motion is granted in part and denied in part.

## FACTS

Swartz was CFO of Tyco beginning in 1995. Swartz left Tyco in September 2002, one day before he was indicted by the state of New York for his involvement in a scheme with Tyco's Chief Executive Officer, Dennis Kozlowski, to loot Tyco's treasury of tens of millions of dollars. Tyco's actions against Kozlowski have already been the subject of a similar summary judgment motion. Tyco Intern., Ltd. v. Kozkowski, slip. op., No. 02cv7317, 2010 WL 4903201 (S.D.N.Y. Dec. 1, 2010).

Swartz's exit from Tyco, however, was much more amicable than Kozlowski's. Whereas Kozlowski was forced out shortly after the scheme was uncovered, Swartz stayed and cooperated with Tyco's internal investigation of the looting scheme and was asked to remain as CFO of Tyco until a replacement could be found. In exchange for this, Swartz was awarded a severance package worth tens of millions of dollars.

This amicability between Tyco and Swartz ended in 2003 when Tyco brought the instant suit against Swartz seeking, among other things, to have Swartz disgorge all compensation earned during the period of his disloyalty.

The New York indictment referred to earlier charged Swartz and Kozlowski with numerous crimes relating to their activities at Tyco, including grand larceny in the first degree and falsifying business records in the first degree. Swartz and Kozlowski were convicted together by a jury in New York state court on 22 felony counts. All convictions were upheld on appeal. Swartz is currently serving his sentence.

This motion hinges on the application of collateral estoppel. In order to properly apply the doctrine of collateral estoppel it is necessary to determine the extent to which the allegations made by Tyco against Swartz in the civil complaint correspond to crimes of which Swartz was convicted.

The complaint in the civil action contains allegations of specific wrongdoing on the part of Swartz in a section of the complaint entitled

"Facts Common to All Claims"--paragraphs 14-70.  This section of the complaint is followed by the causes of action--breach of fiduciary duty, inducing breach of fiduciary duty, conversion, etc.  These causes of action reallege all of the allegations of specific wrongdoing in paragraphs 14-70.  However, there are allegations of specific wrongdoing in the civil complaint that correspond to crimes of which Swartz was convicted, and there are other allegations of wrongdoing that were not the basis of any criminal conviction.  Collateral estoppel will not apply to the latter allegations.

The court will now describe allegations of wrongdoing in the civil complaint that do correspond to criminal convictions.

The New York Relocation Plan

Paragraphs 16-22 of the complaint allege wrongdoing in connection with Tyco's New York Relocation Plan.  When Tyco began planning to relocate certain offices to New York City, it established a relocation plan to assist those who needed to move.  Tyco alleges that Swartz and Kozlowski established their own shadow relocation plan and used the funds from that plan for unapproved, personal use.  This unauthorized use of funds was then hidden from Tyco's Compensation Committee.

These same allegations underlie Swartz's criminal conviction of falsifying business records in the first degree (Count 16 on the verdict sheet).  As the judge instructed the jury, for Swartz to be convicted of

- 3 -

this count, the jury must find that "with intent to defraud . . . Swartz made or caused to be made a false entry in the business records of an enterprise, to wit, Tyco International Limited New York City Headquarters Relocation program."

Abuse of the Key Employee Loan ("KEL") Program

Paragraphs 23-25 of the complaint allege wrongdoing in connection with Tyco's KEL program.  In order to encourage ownership of Tyco stock, the KEL program was established to loan funds to certain officers for the purpose of paying taxes due upon the vesting of Tyco stock options.  The complaint alleges that Swartz, as CFO, caused Kozlowski's KEL account balance to be improperly credited with $25 million and his own KEL account balance to be improperly credited with $12.5 million.

Swartz was convicted of two counts (Counts 1 and 2) of grand larceny in the first degree with regard to the improper crediting of Kozlowski's and his own accounts.  As the judge instructed the jury, for Swartz to be convicted of these counts, the jury must find that Swartz "wrongfully took, obtained or withheld money having a value in excess one million dollars from Tyco International," and that the jury must find that in 1999 Swartz caused a $25 million reduction in Kozlowski's KEL balance and a $12.5 million reduction in his own KEL balance.

Unauthorized Bonuses

The complaint alleges in paragraphs 30-44 and 52-56 that Swartz, as CFO, awarded himself unauthorized bonuses in connection with three Tyco transactions. First, in September 2000, after the successful completion of an initial public offering of stock in a Tyco subsidiary (TyCom), Swartz inappropriately awarded himself over $16 million from Tyco. Then, in November 2000, in connection with the sale by Tyco of the ADT Automotive business unit, Swartz inappropriately awarded himself over $8 million from Tyco. Finally, from June 2001 through October 2001, Swartz used a Tyco transaction with Flag Telecom Holdings Ltd. as a cover to inappropriately award himself almost $7 million from Tyco.

Swartz was convicted of one count of grand larceny in the first degree for each of the three instances improper bonuses alleged in the civil complaint. As the judge instructed, to be found guilty the jury must find that Swartz "wrongfully took, obtained or withheld . . . 16 million dollars . . . in connection with the TyCom IPO" (Count 4), "8 million dollars . . . in connection with the sale of the ADT Automotive business unit" (Count 6), and "4 million dollars in connection with the FLAG transaction" (Count 9).

Swartz was also convicted of aiding Kozlowski in obtaining unauthorized bonuses in the same transactions (Counts 3, 5, and 8).

Trump Tower Payment

Paragraph 58.d of the complaint alleges that Swartz improperly caused Tyco to pay him $1.2 million on March 1, 2001, to cover personal losses suffered in real estate transactions involving apartments in Trump Tower in New York City.  The court takes judicial notice that Trump Tower is located at One Central Park West in New York City.

Swartz was convicted of one count of grand larceny in the first degree for this improper payment (Count 7).  As the judge instructed, to be found guilty on this count the jury must find that Swartz "wrongfully took, obtained or withheld . . . 1.2 million dollars wired to his Family Partnership in connection with One Central Park West on or about March 1st of 2001."

Frank Walsh Payment

Paragraphs 61-64 of the complaint allege that in July 2001 Swartz participated in the unauthorized payment by Tyco of a $20 million bonus to Tyco Outside Director Frank Walsh in connection with the acquisition of the CIT Group.

Swartz was convicted of one count of grand larceny in the first degree for his participation in this unauthorized payment (count 13) to Walsh.  As the judge instructed, to be found guilty on this count the jury must find that Swartz caused "a taking on or about July of 2001 relating to a 20 million dollar disbursement to and on behalf of director Frank E. Walsh."

\* \* \*

As indicated earlier, the complaint in the civil action contains specific allegations of wrongdoing on the part of Swartz in addition to what has just been described.  There are no criminal convictions corresponding to these additional allegations.  Such additional allegations can be readily found as being those portions of the complaint not described in this opinion.

## DISCUSSION

The rules regarding the treatment of summary judgment motions are well understood and have been summarized in many decisions.

Collateral Estoppel

In the present case, New York's law of collateral estoppel governs. See Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  For collateral estoppel to apply there must be an identity of issues which have necessarily been decided in the prior action and which would be decisive in the present action.  Buechel v. Bain, 97 N.Y.2d 295, 304 (2001).  A criminal conviction may provide the basis for collateral estoppel. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 157 (1963).

As noted earlier, the various causes of action in the civil complaint (for breach of fiduciary duty, etc.) incorporated all the specific allegations of wrongdoing alleged in the section "Facts Common to All Claims." However, the doctrine of collateral estoppel applies to part, but not all, of the specific allegations of wrongdoing.  Nevertheless, the portions of the

specific allegations that form the basis of Swartz's criminal convictions--and are therefore treated as undisputed facts in this case via collateral estoppel--are of such a nature, and sufficiently serious, that they do, in and of themselves, make a sufficient case for breach of fiduciary duty and other causes of action as will now be described.  Therefore the court will grant partial summary judgment on liability on certain causes of action.  However, there will need to be a process by which it will be clear in the judgment what factual allegations are the bases for the judgment as to the various causes of action.  And if Tyco wishes to obtain judgment based on additional factual allegations not covered by collateral estoppel, then there would need to be further motion practice or a trial.

The convictions for grand larceny in connection the KEL program, the bonus payments, the Trump Tower payment, and the Frank Walsh payment, as well as the conviction for falsifying business records in connection with the New York Relocation Plan establish beyond any doubt that Swartz committed breaches of fiduciary duty of an aggravated nature.  Thus Tyco is entitled to summary judgment as to liability on the first cause of action alleging such breach of duty.

Similarly, such convictions also establish Swartz's liability for inducing breach of fiduciary duty (second cause of action) and conspiracy to breach fiduciary duty (third cause of action).  For instance, Swartz was convicted of making an unauthorized reduction in

Kozlowski's KEL loan balance as well as aiding Kozlowski in obtaining unauthorized bonuses. These actions establish his liability for inducing breach of fiduciary duty and conspiracy to induce breach of fiduciary duty. See Lonsdale v. Speyer, 291 N.Y.S. 495, 504-05 (1st Dep't 1936) ("One who co-operates with a fiduciary in his breach of duty becomes liable in every way as the fiduciary with whom he cooperates.").

The convictions noted above for grand larceny also establish Swartz's liability for conversion (eighth cause of action).

Swartz's convictions do not, however, establish all the elements necessary for a claim of fraud (fourth cause of action). These convictions establish neither reliance, nor injury.

Tyco's Equitable Claims

As in the Kozlowski case, questions remain in this case as to whether the damages that Tyco may be entitled to will amount to an adequate legal remedy, precluding an equitable remedy. Therefore, summary judgment on Tyco's accounting, constructive trust, and unjust enrichment claims (fifth, sixth, and seventh causes of actions) is denied.

Hearsay

In seeking to blunt the force of these overwhelming facts, Swartz argues Tyco's motion is impermissibly based on hearsay. What is referred to is the use of quotations from decisions on Swartz's appeal from his criminal conviction. Tyco was surely entitled to use these quotations in its briefing as it did. But for the technical application of

collateral estoppel, the court has strictly confined itself to the record of what Swartz was charged with in the criminal case and what he was convicted of.  See Kreinik v. Showbran Photo, Inc., 400 F. Supp. 2d 554, 566-70 (S.D.N.Y. 2005) (using jury instructions to determine extent of collateral estoppel).

Swartz's Separation from Tyco

Swartz also argues that Tyco was aware of Swartz's misconduct when it granted Swartz a multi-million dollar severance package in exchange for Swartz's release of even greater compensation.  Because of this, Swartz argues, a factual issue remains as to whether Tyco has forfeited its right to have him disgorge any compensation.

Unlike the Kozlowski case, the issue of disgorgement in this case relates solely to damages.  Tyco has acknowledged that there are factual issues regarding damages that cannot be disposed of at this time.  This summary judgment motion goes only to the question of liability.

## CONCLUSION

Tyco's partial motion for summary judgment on liability is granted as to the first, second, third, and eighth causes of action, and denied as to the fourth, fifth, sixth, and seventh causes of action.  This resolves the motion listed as document 20 in this case.

- 11 -

SO ORDERED.

Dated: New York, New York
       March 3, 2011

_____
Thomas P. Griesa
U.S.D.J.