



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TYCO INTERNATIONAL LTD. and
TYCO INTERNATIONAL (US) INC.,

    Plaintiffs,

v.

MARK H. SWARTZ,

    Defendant.

Civil Action No. 03-cv-2247 (TPG)

## JOINT PRETRIAL ORDER

In order to promote efficiency and judicial economy, Plaintiffs Tyco International Ltd. and Tyco International (U.S.) Inc. (collectively, "Tyco") and Defendant Mark H. Swartz have agreed to submit this joint pretrial order, containing relevant information in advance of trial, which is scheduled to begin on October 15, 2012.

**I.  Brief Summary of the Parties' Positions on Claims and Defenses**

    **A.  Tyco's Claims**

Tyco seeks disgorgement of money, including compensation received by Swartz pursuant to the faithless servant doctrine, prejudgment interest and punitive damages, on the following claims: breach of fiduciary duty (count I), inducing breach of fiduciary duty (count II), and conspiracy to breach fiduciary duty (count III).

In addition, Tyco seeks interest and punitive damages on its claim for conversion (count VIII).

In addition, based on largely the same evidence that is presented in the trial, Tyco will seek recovery from the Court on the following equitable claims: accounting (count V), constructive trust (count VI), and unjust enrichment (count VII).

Tyco will not proceed at trial with its contribution claim (count IX).

### B.     Swartz's Defenses

In response to Tyco's pursuit of disgorgement of compensation under the faithless servant doctrine in connection with its First (breach of fiduciary duty), Second (inducing breach of fiduciary duty), Third (conspiracy to breach fiduciary duty) and Eighth (conversion) Claims, Mr. Swartz will assert that Tyco waived any and all rights to seek such disgorgement by agreeing to pay, and in fact paying, multimillion-dollar deferred compensation and severance benefits in August 2002, with informed advice of counsel, and with actual knowledge of (1) the District Attorney's intention to indict Mr. Swartz, and (2) substantially all of the facts and circumstances upon which the company has since relied to assert his disloyalty. Upon the same facts, Mr. Swartz would assert in the alternative that Tyco is equitably estopped from seeking such disgorgement, and that the doctrine of unclean hands would preclude clawback of compensation (Tyco having induced Mr. Swartz to relinquish his contractual entitlement to additional severance amounts under the amendment to his Retention Agreement).

To whatever extent Mr. Swartz would not prevail on the above outright defenses to faithless servant disgorgement, he reserves his right to assert that any disloyal conduct did not so permeate his service to the company as to trigger the disgorgement remedy, and to argue that the remedy should be apportioned by pay period or task.

In response to Tyco's requests for equitable relief under its Fifth (accounting), Sixth (constructive trust) and Seventh (unjust enrichment) Claims, Mr. Swartz will assert that any remedies at law would be adequate redress and would act to bar equitable relief.

### C. Stipulation on Tyco's Fraud Claim

One of Tyco's claims alleges fraud (Count IV). Tyco and Mr. Swartz agree that it is unnecessary to reach the fraud claim if Tyco prevails in recovering disgorgement damages under the faithless servant doctrine, unless the Second Circuit reverses any part of such recovery. Therefore, Tyco and Mr. Swartz agree that after completion of the upcoming trial and post-trial filings, there would be no just reason for delay and therefore will request that the Court enter final judgment pursuant to Rule 54(b) as to all of the claims and counterclaims other than fraud (Count IV).

## II. Stipulated Undisputed Facts

1. Mr. Swartz served as Chief Financial Officer ("CFO") of Tyco International Ltd. from February 1995 to September 11, 2002.

2. Mr. Swartz served as a member of the Board of Directors of Tyco International Ltd. from April 2001 to August 2002.

3. On August 1, 2002, Tyco and Mr. Swartz agreed that Mr. Swartz would resign immediately from Tyco's Board of Directors (and from the Board of a Tyco subsidiary) and that he would resign as CFO, but continue to serve in that role until a successor was found.

4. Mr. Swartz's last day of employment at Tyco was September 11, 2002.

5. Following a trial in the New York Supreme Court, New York County, Mr. Swartz was convicted of 22 criminal counts.

6. Mr. Swartz was convicted of grand larceny in the first degree based on a reduction made on August 28, 1999 to his Key Employee Loan account balance in the amount of

$12.5 million and to the Key Employee Loan account balance of L. Dennis Kozlowski in the amount of $25 million without Tyco's authorization.

7. Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $32 million bonus paid to Mr. Kozlowski and an approximately $16 million bonus paid to Mr. Swartz on September 28, 2000 without Tyco's authorization in connection with the TyCom IPO.

8. Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $16 million bonus paid to Mr. Kozlowski and an approximately $8 million bonus paid to Mr. Swartz on November 13, 2000 without Tyco's authorization in connection with the sale of the ADT Automotive business unit.

9. Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $8 million bonus paid to Mr. Kozlowski and an approximately $4 million bonus paid to Mr. Swartz on August 14, 2001 without Tyco's authorization in connection with the FLAG transaction.

10. Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $1.2 million made on Mr. Swartz's behalf on March 1, 2001 without Tyco's authorization for a deposit Mr. Swartz made in a real estate transaction for property located at One Central Park West.

11. As part of his sentence, Mr. Swartz was ordered to pay, and did pay, restitution to Tyco in the amount of $37,773,101, which represents the unauthorized compensation paid to Mr. Swartz underlying the grand larceny convictions described in paragraphs 7 through 10 above, plus gross-up for taxes if applicable.

12. In addition, Mr. Swartz had previously repaid with interest, in July 2002, the $12.5 million amount at issue in his conviction in paragraph 6.

13. Mr. Swartz's co-defendant in the criminal case, Mr. Kozlowski, was also ordered to pay, and did pay, restitution in the amount of $97,778,296, which represents the unauthorized compensation paid to Mr. Kozlowski underlying the grand larceny convictions described in paragraphs 6 through 9 above, plus gross up for taxes.

14. Mr. Swartz was convicted of grand larceny in the first degree based on $20 million in disbursements made to and on behalf of director Frank Walsh in July 2001 without Tyco's authorization.

15. The $20 million in disbursements to and on behalf of director Frank Walsh underlying the conviction described in paragraph 13 above was repaid to Tyco by Mr. Walsh.

16. Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $8.8 million made on behalf of Mr. Kozlowski in December 2001 to purchase artwork without Tyco's authorization.

17. Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $3.95 million made on behalf of Mr. Kozlowski in January 2002 to purchase artwork without Tyco's authorization.

18. The artwork underlying the convictions described in paragraphs 16 and 17 above was returned to Tyco.

19. Mr. Swartz was convicted of falsifying business records in the first degree in connection with September 1995 documents related to the Tyco New York City Headquarters Relocation Program.

20. The jury found that Swartz made or caused to be made a false entry in the business records of Tyco concerning its New York Headquarters Relocation Plan with an intent to defraud.

21. Mr. Swartz was convicted of falsifying business records in the first degree by signing Director and Officer Questionnaires on November 30, 1997, November 30, 1998, August 12, 1999, December 30, 1999, February 11, 2000, January 18, 2001, and January 25, 2002, which stated that "[n]either [he] nor any associate of [his] has had indebtedness (other than indebtedness arising from transactions in the ordinary course of business and indebtedness owed Tyco in connection with any loan granted in connection with the Tyco International (US) Inc. 1983 Key Employee Loan Program), owing to Tyco or any of its subsidiaries at any time [during the relevant fiscal year] in an aggregate amount in excess of $60,000."

22. From September 1, 1995 through December 31, 1995, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $100,000 (prorated from an annual base salary of $275,000.02) paid on a monthly basis;
- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $5,150; and
- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $615,625.

23. The net pay received by Mr. Swartz for the September 1, 1995 through December 1, 1995 period, after deducting $227,067.69 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments) was $484,155.19.

24. In 1996, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $438,708.28 paid on a monthly basis;
- A bonus of $500,000;

6

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $19,600;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $2,551,031.25; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $481,617.80.

25.  The net pay received by Mr. Swartz for 1996, after deducting deferred compensation, contributions to the 401(k), $994,325.99 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $2,607,242.89.

26.  In 1997, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $479,749.98 paid on a monthly basis;

- A bonus of $3,941,505;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $25,500;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $10,507,907.50;

- A Supplemental Executive Retirement Plan ("SERP") contribution of $81,321.02; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $275,066.50.

27.  The net pay received by Mr. Swartz for 1997, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,330,793.26 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $7,933,536.07.

28.  In 1998, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $582,125.01 paid on a monthly basis;

- A bonus of $1,250,000;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $8,700;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $12,160,075.20;

- A SERP contribution of $216,152.11;

- Options of $17,152,765; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $202,971.88.

29. The net pay received by Mr. Swartz for 1998, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $8,769,779.49 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $21,012,358.56.

30. In 1999, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $775,000.03 paid on a monthly basis;

- A bonus of $1,600,000;

- A SERP contribution of $93,188.16;

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $88,718.21; and

- Share equivalents of $8,074,680.60.

31. The net pay received by Mr. Swartz for 1999, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,504,849.80 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $5,006,950.60.

32. In 2000, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $756,649 paid on a monthly basis;

- A bonus of $1,750,000, including $350,000 paid in connection with the ADT bonus that was one of the subjects of the criminal convictions;

- Relocation benefits (including gross up) of $16,610,687 paid in September 2000 in connection with the TyCom bonus, which was one of the subjects of the criminal convictions;

- Relocation benefits of $8,305,344 (including gross up) paid in November 2000 in connection with the ADT bonus, which was one of the subjects of the criminal convictions;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $19,909,535.80, including $4,189,288 in restricted stock vesting paid in connection with the ADT bonus, which was one of the subjects of the criminal convictions;

- A SERP contribution of $115,583.92;

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $83,786.19; and

- Share equivalents of $13,148,674.80.

33. The net pay received by Mr. Swartz for 2000, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $19,227,509.75 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), and credits for the TyCom bonus totaling $16,610,687 (including gross up) and the ADT bonus totaling $12,844,632 (including gross-up), which were the subject of the criminal convictions and Court-ordered restitution payment, was $10,039,654.01.

34. In 2001, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $807,499.97 paid on a monthly basis;

- A bonus of $2,000,000;

- A reimbursement of $1,200,000 to cover lost deposits on personal real estate transactions involving apartments in Trump Tower at One Central Park West in New York;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $11,697,352.62, including a stock vesting of $7,117,782 paid

9

in August 2001 as a bonus in connection with the FLAG transaction, which was one of the subjects of the criminal convictions;

- A SERP contribution of $143,422.05; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $3,801,781.33.

35.   The net pay received by Mr. Swartz for 2001, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $5,584,928.29 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), and credits for the $7,117,782 stock vesting in connection with the FLAG transaction and the $1,200,000 in reimbursements for personal real estate transactions, which were the subject of the criminal convictions and Court-ordered restitution payment, was $3,041,576.22

36.   From January 1, 2002 to May 31, 2002, Mr. Swartz earned the following as compensation from Tyco:

- A base salary of $427,083.35 paid on a monthly basis;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $5,667,121.25;

- A SERP contribution of $138,750; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $6,071,170.31.

37.   The net pay received by Mr. Swartz for the January 1, 2002 to May 31, 2002 period, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,287,697.45 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $8,539,234.12.

38. From June 1, 2002 to September 11, 2002, Mr. Swartz earned the following, excluding amounts paid pursuant to the August 2002 separation agreement, as compensation from Tyco:

- A base salary of $287,788.47 paid on a monthly basis;

- A bonus of $419,287.20;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $9,009,985.73;

- A SERP contribution of $91,032.23; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $1,698,705.50.

39. The net pay received by Mr. Swartz for the June 1, 2002 to September 11, 2002 period, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $2,786,725.01 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments) and not including the amounts paid pursuant to the August 2002 separation agreement, was $6,000,721.45.

40. Pursuant to the August 2002 separation agreement, Tyco paid Swartz $44,811,166.87, which includes payments under Swartz's deferred compensation plan and executive life insurance plan.

41. As part of Mr. Swartz's compensation, Tyco made grants of Tyco stock options to Mr. Swartz that, after Tyco's stock split, are as follows:

- On July 17, 1997, options to 666,668 shares were granted at an exercise price of $19.16.

- On July 17, 1997, options to 666,666 shares were granted at an exercise price of $19.16.

- On October 28, 1997, options to 333,333 shares were granted at an exercise price of $19.69.

- On October 28, 1997, options to 333,333 shares were granted at an exercise price of $19.69.

- On October 28, 1997, options to 333,334 shares were granted at an exercise price of $19.69.

- On July 16, 1998, options to 324,000 shares were granted at an exercise price of $34.05.

- On July 16, 1998, options to 200,000 shares were granted at an exercise price of $34.05.

- On July 17, 1998, options to 666,666 shares were granted at an exercise price of $34.11.

- On July 17, 1998, options to 250,000 shares were granted at an exercise price of $34.11.

- On October 22, 1998, options to 312,000 shares were granted at an exercise price of $29.23.

- On October 18, 1999, options to 196,000 shares were granted at an exercise price of $41.20.

- On January 5, 2000 options to 372,000 shares were granted at an exercise price of $35.35.

42. Of the July 17, 1997 options granted to Swartz, 666,668 were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99; 418,197 were exercised on September 7, 2000 when the fair market value of Tyco stock was $58.28; and 248,469 were exercised on September 11, 2000 when the fair market value of Tyco stock was $56.83.

43. Of the October 28, 1997 options granted to Swartz, 333,334 were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99; 333,333 were exercised on September 11, 2000, when the fair market value of Tyco stock was $56.83; and 333,333 were exercised on February 1, 2001, when the fair market value of Tyco stock was $60.79.

44. All 524,000 of the July 16, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99

45.     All 916,666 of the July 17, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99.

46.     All 312,000 of the October 22, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99.

47.     All 196,000 of the October 18, 1999 options granted to Swartz were exercised on September 12, 2000 when the fair market value of Tyco stock was $55.25.

48.     Of the January 5, 2000 options granted to Swartz, 362,596 were exercised on September 7, 2000 when the fair market value of Tyco stock was $56.83; and 9,404 were exercised on September 12, 2000 when the fair market value of Tyco stock was $55.25.

### III. Witnesses

#### A. Tyco's Witnesses

Tyco expects to call the following witnesses at trial:

1. Linda Auger (live)
2. David Boies (live or by designation)
3. Edward Breen (live)
4. Mark Swartz (live)

In addition, Tyco may call the following witnesses at trial:

1. John Fort (by designation)
2. Stephen Foss (by designation)
3. Wendy Lane (by designation)

In addition, Tyco reserves its right to call any additional witnesses in rebuttal depending on the defense case.

#### B. Swartz Witnesses

Witnesses who may be called for live testimony:

1. Mark Swartz

13

Witnesses who may be called for live testimony or by designation of prior testimony:

1. John Ashcroft
2. Joshua Berman
3. Richard Bodman
4. Edward Breen
5. John Fort
6. Stephen Foss
7. John Jenkins
8. Wendy Lane
9. James Pasman
10. Peter Slusser
11. Joseph Welch

Witnesses who may be called by designation of prior testimony:

1. David Boies

Mr. Swartz also reserves his right, in the event of a rebuttal case by Plaintiffs, to call additional witnesses in sur-rebuttal.

## IV.     Prior Testimony Designations

Lists of the proposed designation of prior testimony by Tyco and Mr. Swartz, along with objections to the testimony offered by the other side, will be submitted to the Court on October 5, 2012. The parties reserve the right to modify or supplement these lists, as appropriate, including, without limitation, in response to future rulings by the Court and/or evidence offered or presented by the opposing party.

## V.     Exhibit Lists

A list of Tyco's trial exhibits, along with Mr. Swartz's objections, will be submitted to the Court on October 5, 2012.

A list of Mr. Swartz's trial exhibits, along with Tyco's objections, will be submitted to the Court on October 5, 2012.

The parties reserve the right to modify or supplement these lists, as appropriate, including, without limitation, in response to future rulings by the Court and/or evidence offered or presented by the opposing party.

Fred H. Bartlit, Jr.*
Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Telephone:   (303) 592-3165
Facsimile:   (303) 592-3140

Mark Levine*
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone:   (312) 494-4454
Facsimile    (312) 494-4440

Marshall Beil
McGuireWoods LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone:   (212) 548-2100
Facsimile:   (212) 548-2150

Charles Wm. McIntyre*
McGuireWoods LLP
2001 K. Street N.W., Suite 400
Washington, D.C. 20006-1040
Telephone:   (202) 857 01700
Facsimile:   (202) 857-1737

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Tyco International Limited and Tyco International (US) Inc.*

Michael J. Grudberg
James A. Mitchell
Stillman & Friedman, P.C.
425 Park Avenue
New York, New York 10022
Telephone:   (212) 223-0200

*Attorneys for Defendant Mark H. Swartz*

SO ORDERED:
Dated:          New York, New York

10/4/12

THOMAS P. GRIESA
United States District Judge