USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: Oct 18 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TYCO INTERNATIONAL LTD. and
TYCO INTERNATIONAL (US) INC.,

     Plaintiffs,

     v.

MARK H. SWARTZ,

     Defendant.

Civil Action No. 03-cv-2247 (TPG)

RECEIVED
OCT 15 2012
CHAMBERS OF
JUDGE GRIESA

## JOINT STIPULATION OF UNDISPUTED FACTS

Plaintiffs Tyco International Ltd. and Tyco International (U.S.) Inc. and Defendant Mark H. Swartz file this Joint Stipulation Of Undisputed Facts (including stipulations 1 through 48 contained in Section II of the Pretrial Order (Dkt. No. 51) as well as additional stipulations) and state as follows:

1.     Mr. Swartz served as Chief Financial Officer ("CFO") of Tyco International Ltd. from February 1995 to September 11, 2002.

2.     Mr. Swartz served as a member of the Board of Directors of Tyco International Ltd. from April 2001 to August 2002.

3.     On August 1, 2002, Tyco and Mr. Swartz agreed that Mr. Swartz would resign immediately from Tyco's Board of Directors (and from the Board of a Tyco subsidiary) and that he would resign as CFO, but continue to serve in that role until a successor was found.

4.     Mr. Swartz's last day of employment at Tyco was September 11, 2002.

5.     Following a trial in the New York Supreme Court, New York County, Mr. Swartz was convicted of 22 criminal counts.

6.      Mr. Swartz was convicted of grand larceny in the first degree based on a reduction made on August 28, 1999 to his Key Employee Loan account balance in the amount of $12.5 million and to the Key Employee Loan account balance of L. Dennis Kozlowski in the amount of $25 million without Tyco's authorization.

7.      Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $32 million bonus paid to Mr. Kozlowski and an approximately $16 million bonus paid to Mr. Swartz on September 28, 2000 without Tyco's authorization in connection with the TyCom IPO.

8.      Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $16 million bonus paid to Mr. Kozlowski and an approximately $8 million bonus paid to Mr. Swartz on November 13, 2000 without Tyco's authorization in connection with the sale of the ADT Automotive business unit.

9.      Mr. Swartz was convicted of grand larceny in the first degree based on an approximately $8 million bonus paid to Mr. Kozlowski and an approximately $4 million bonus paid to Mr. Swartz on August 14, 2001 without Tyco's authorization in connection with the FLAG transaction.

10.     Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $1.2 million made on Mr. Swartz's behalf on March 1, 2001 without Tyco's authorization for a deposit Mr. Swartz made in a real estate transaction for property located at One Central Park West.

11.     As part of his sentence, Mr. Swartz was ordered to pay, and did pay, restitution to Tyco in the amount of $37,773,101, which represents the unauthorized compensation paid to Mr.

Swartz underlying the grand larceny convictions described in paragraphs 7 through 10 above, plus gross-up for taxes if applicable.

12.     In addition, Mr. Swartz had previously repaid with interest, in July 2002, the $12.5 million amount at issue in his conviction in paragraph 6.

13.     Mr. Swartz's co-defendant in the criminal case, Mr. Kozlowski, was also ordered to pay, and did pay, restitution in the amount of $97,778,296, which represents the unauthorized compensation paid to Mr. Kozlowski underlying the grand larceny convictions described in paragraphs 6 through 9 above, plus gross up for taxes.

14.     Mr. Swartz was convicted of grand larceny in the first degree based on $20 million in disbursements made to and on behalf of director Frank Walsh in July 2001 without Tyco's authorization.

15.     The $20 million in disbursements to and on behalf of director Frank Walsh underlying the conviction described in paragraph 13 above was repaid to Tyco by Mr. Walsh.

16.     Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $8.8 million made on behalf of Mr. Kozlowski in December 2001 to purchase artwork without Tyco's authorization.

17.     Mr. Swartz was convicted of grand larceny in the first degree based on a disbursement of $3.95 million made on behalf of Mr. Kozlowski in January 2002 to purchase artwork without Tyco's authorization.

18.     The artwork underlying the convictions described in paragraphs 16 and 17 above was returned to Tyco.

19.    Mr. Swartz was convicted of falsifying business records in the first degree in connection with September 1995 documents related to the Tyco New York City Headquarters Relocation Program.

20.    The jury found that Swartz made or caused to be made a false entry in the business records of Tyco concerning its New York Headquarters Relocation Plan with an intent to defraud.

21.    Mr. Swartz was convicted of falsifying business records in the first degree by signing Director and Officer Questionnaires on November 30, 1997, November 30, 1998, August 12, 1999, December 30, 1999, February 11, 2000, January 18, 2001, and January 25, 2002, which stated that "[n]either [he] nor any associate of [his] has had indebtedness (other than indebtedness arising from transactions in the ordinary course of business and indebtedness owed Tyco in connection with any loan granted in connection with the Tyco International (US) Inc. 1983 Key Employee Loan Program), owing to Tyco or any of its subsidiaries at any time [during the relevant fiscal year] in an aggregate amount in excess of $60,000."

22.    From September 1, 1995 through December 31, 1995, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $100,000 (prorated from an annual base salary of $275,000.02) paid on a monthly basis;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $5,150; and

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $615,625.

23.    The net pay received by Mr. Swartz for the September 1, 1995 through December 1, 1995 period, after deducting $227,067.69 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments) was $484,155.19.

4

24.    In 1996, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $438,708.28 paid on a monthly basis;

- A bonus of $500,000;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $19,600;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $2,551,031.25; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $481,617.80.

25.    The net pay received by Mr. Swartz for 1996, after deducting deferred compensation, contributions to the 401(k), $994,325.99 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $2,607,242.89.

26.    In 1997, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $479,749.98 paid on a monthly basis;

- A bonus of $3,941,505;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $25,500;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $10,507,907.50;

- A Supplemental Executive Retirement Plan ("SERP") contribution of $81,321.02; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $275,066.50.

27.    The net pay received by Mr. Swartz for 1997, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,330,793.26 in federal tax

5

withholdings and other miscellaneous deductions (including medical, dental and long term

disability payments), was $7,933,536.07.

28.    In 1998, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $582,125.01 paid on a monthly basis;

- A bonus of $1,250,000;

- Dividends paid on outstanding restricted stock awards, including restricted stock awards that may have been granted in prior periods, of $8,700;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $12,160,075.20;

- A SERP contribution of $216,152.11;

- Options of $17,152,765; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $202,971.88.

29.    The net pay received by Mr. Swartz for 1998, after deducting deferred

compensation, contributions to the 401(k), the SERP and the DCP, $8,769,779.49 in federal tax

withholdings and other miscellaneous deductions (including medical, dental and long term

disability payments), was $21,012,358.56.

30.    In 1999, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $775,000.03 paid on a monthly basis;

- A bonus of $1,600,000;

- A SERP contribution of $93,188.16;

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $88,718.21; and

- Share equivalents of $8,074,680.60.

6

31.     The net pay received by Mr. Swartz for 1999, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,504,849.80 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $5,006,950.60.

32.     In 2000, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $756,649 paid on a monthly basis;

- A bonus of $1,750,000, including $350,000 paid in connection with the ADT bonus that was one of the subjects of the criminal convictions;

- Relocation benefits (including gross up) of $16,610,687 paid in September 2000 in connection with the TyCom bonus, which was one of the subjects of the criminal convictions;

- Relocation benefits of $8,305,344 (including gross up) paid in November 2000 in connection with the ADT bonus, which was one of the subjects of the criminal convictions;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $19,909,535.80, including $4,189,288 in restricted stock vesting paid in connection with the ADT bonus, which was one of the subjects of the criminal convictions;

- A SERP contribution of $115,583.92;

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $83,786.19; and

- Share equivalents of $13,148,674.80.

33.     The net pay received by Mr. Swartz for 2000, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $19,227,509.75 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), and credits for the TyCom bonus totaling $16,610,687 (including gross up) and the ADT bonus totaling $12,844,632 (including gross-up), which were the subject of the criminal convictions and Court-ordered restitution payment, was $10,039,654.01.

7

34.    In 2001, Mr. Swartz earned the following as compensation from Tyco:

- An annual base salary of $807,499.97 paid on a monthly basis;

- A bonus of $2,000,000;

- A reimbursement of $1,200,000 to cover lost deposits on personal real estate transactions involving apartments in Trump Tower at One Central Park West in New York;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $11,697,352.62, including a stock vesting of $7,117,782 paid in August 2001 as a bonus in connection with the FLAG transaction, which was one of the subjects of the criminal convictions;

- A SERP contribution of $143,422.05; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $3,801,781.33.

35.    The net pay received by Mr. Swartz for 2001, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $5,584,928.29 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), and credits for the $7,117,782 stock vesting in connection with the FLAG transaction and the $1,200,000 in reimbursements for personal real estate transactions, which were the subject of the criminal convictions and Court-ordered restitution payment, was $3,041,576.22

36.    From January 1, 2002 to May 31, 2002, Mr. Swartz earned the following as compensation from Tyco:

- A base salary of $427,083.35 paid on a monthly basis;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $5,667,121.25;

- A SERP contribution of $138,750; and

8

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $6,071,170.31.

37.    The net pay received by Mr. Swartz for the January 1, 2002 to May 31, 2002 period, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $3,287,697.45 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments), was $8,539,234.12.

38.    From June 1, 2002 to September 11, 2002, Mr. Swartz earned the following, excluding amounts paid pursuant to the August 2002 separation agreement, as compensation from Tyco:

- A base salary of $287,788.47 paid on a monthly basis;

- A bonus of $419,287.20;

- A stock vesting, including vesting on restricted stock that may have been granted in prior periods, of $9,009,985.73;

- A SERP contribution of $91,032.23; and

- Other earnings (including, but not limited to interest differential, group term life insurance and gross-ups) of $1,698,705.50.

39.    The net pay received by Mr. Swartz for the June 1, 2002 to September 11, 2002 period, after deducting deferred compensation, contributions to the 401(k), the SERP and the DCP, $2,786,725.01 in federal tax withholdings and other miscellaneous deductions (including medical, dental and long term disability payments) and not including the amounts paid pursuant to the August 2002 separation agreement, was $6,000,721.45.

40.    Pursuant to the August 2002 separation agreement, Tyco paid Swartz $44,811,166.87, which includes payments under Swartz's deferred compensation plan and executive life insurance plan.

9

41.    As part of Mr. Swartz's compensation, Tyco made grants of Tyco stock options to

Mr. Swartz that, after Tyco's stock split, are as follows:

- On July 17, 1997, options to 666,668 shares were granted at an exercise price of $19.16.

- On July 17, 1997, options to 666,666 shares were granted at an exercise price of $19.16.

- On October 28, 1997, options to 333,333 shares were granted at an exercise price of $19.69.

- On October 28, 1997, options to 333,333 shares were granted at an exercise price of $19.69.

- On October 28, 1997, options to 333,334 shares were granted at an exercise price of $19.69.

- On July 16, 1998, options to 324,000 shares were granted at an exercise price of $34.05.

- On July 16, 1998, options to 200,000 shares were granted at an exercise price of $34.05.

- On July 17, 1998, options to 666,666 shares were granted at an exercise price of $34.11.

- On July 17, 1998, options to 250,000 shares were granted at an exercise price of $34.11.

- On October 22, 1998, options to 312,000 shares were granted at an exercise price of $29.23.

- On October 18, 1999, options to 196,000 shares were granted at an exercise price of $41.20.

- On January 5, 2000 options to 372,000 shares were granted at an exercise price of $35.35.

42.    Of the July 17, 1997 options granted to Swartz, 666,668 were exercised on July

22, 1999 when the fair market value of Tyco stock was $50.99; 418,197 were exercised on

10

September 7, 2000 when the fair market value of Tyco stock was $58.28; and 248,469 were exercised on September 11, 2000 when the fair market value of Tyco stock was $56.83.

43.     Of the October 28, 1997 options granted to Swartz, 333,334 were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99; 333,333 were exercised on September 11, 2000, when the fair market value of Tyco stock was $56.83; and 333,333 were exercised on February 1, 2001, when the fair market value of Tyco stock was $60.79.

44.     All 524,000 of the July 16, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99

45.     All 916,666 of the July 17, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99.

46.     All 312,000 of the October 22, 1998 options granted to Swartz were exercised on July 22, 1999 when the fair market value of Tyco stock was $50.99.

47.     All 196,000 of the October 18, 1999 options granted to Swartz were exercised on September 12, 2000 when the fair market value of Tyco stock was $55.25.

48.     Of the January 5, 2000 options granted to Swartz, 362,596 were exercised on September 7, 2000 when the fair market value of Tyco stock was $56.83; and 9,404 were exercised on September 12, 2000 when the fair market value of Tyco stock was $55.25.

49.     The amount of money pursuant to the formula set forth in Section 3 of the January 22, 2001 Retention Agreement between Tyco and Mark Swartz is $756,250.

50.     The amount of money pursuant to the formula set forth in Section 5(b) of the January 22, 2001 Retention Agreement between Tyco and Mark Swartz is $9,075,000.

51.    The amount of money pursuant to the formula set forth in Section 3 of the Retention Agreement between Tyco and Mark Swartz as amended on August 1, 2001 is $8,354,097.25.

52.    The amount of money pursuant to the formula set forth in Section 5(b) of the Retention Agreement between Tyco and Mark Swartz as amended on August 1, 2001 is $100,249,167.

53.    The value of each of the stock options that Tyco granted Swartz as compensation (which are set forth in Paragraph 41 of the Stipulated Facts in Section II of the Joint Pretrial Order) equals the difference between the price at which the option was exercised and the fair market value of the option on the date the option was exercised.

54.    Plaintiffs' Exhibit 174A (which is part of PX174, attached hereto as Exhibit A) accurately reflects annual W-2 compensation that Tyco paid to Swartz from September 1995 to September 2002, which totals $157,190,272.71 (excluding W-2 compensation that Swartz repaid to Tyco on October 27, 2006).

55.    Plaintiffs' Exhibit 174B accurately reflects the annual compensation that Tyco paid to Swartz in the form of stock options from September 1995 to September 2002, which totals $125,321,568.19.

56.    Plaintiffs' Exhibit 174C accurately calculates interest on the annual compensation that Tyco paid to Swartz from September 1995 to September 2002 at the New York statutory interest rate of 9% (with interest accruing from January 1 of the year following payment of compensation until October 15, 2012), which totals $302,423,478.91.

57.    Plaintiffs' Exhibit 174D accurately calculates interest on the amounts set forth in paragraphs 7 through 10 of the Joint Pretrial Order (Dkt. No. 51) at the New York statutory

interest rate of 9% (with interest accruing from the dates stated in paragraphs 7 through 10 of the

Joint Pretrial Order until October 26, 2006), which totals $19,910,070.

Fred H. Bartlit, Jr.*
Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Telephone:      (303) 592-3165
Facsimile:      (303) 592-3140

Mark Levine*
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone:      (312) 494-4454
Facsimile       (312) 494-4440

Marshall Beil
McGuireWoods LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone:      (212) 548-2100
Facsimile:      (212) 548-2150

Charles Wm. McIntyre*
McGuireWoods LLP
2001 K. Street N.W., Suite 400
Washington, D.C. 20006-1040
Telephone:      (202) 85701700
Facsimile:      (202) 857-1737

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Tyco International Ltd.
and Tyco International (US) Inc.*

Michael J. Grudberg
James A. Mitchell
Stillman & Friedman, P.C.
425 Park Avenue
New York, New York 10022
Telephone:      (212) 223-0200
Facsimile:      (212) 223-1942

*Attorneys for Defendant Mark H. Swartz*

13   10/18/12